THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,
    *Plaintiff*,

    v.

RONALD LENNOX, *et al.*,
    *Defendants*.

Civil Action No. ELH-19-1382

## MEMORANDUM OPINION

This case involves a dispute concerning insurance coverage. The litigation is rooted in the partial collapse of a building during a waterproofing project.

Plaintiff State Automobile Mutual Insurance Company ("State Auto"), as subrogee of Kirkley-Ruddick Funeral Home, P.A. (the "Funeral Home")[1] and Scott and Cheryl Ruddick, and as assignee of Budget Waterproofing, Inc. ("Budget"), filed suit against Ronald Lennox and State Farm Fire and Casualty Company ("State Farm"). ECF 1 (the "Complaint"). In 2016, while Budget was performing a waterproofing project for Funeral Home, the structure partially collapsed. Funeral Home's insurer, State Auto, paid over $300,000 on the claim and then sought to recover from Budget's insurance company, State Farm. However, State Farm denied coverage.

In the Complaint, State Auto alleges that Mr. Lennox, who operated an insurance agency in Glen Burnie, Maryland, failed to procure adequate liability insurance for Budget, in breach of

---

[1] In the caption of the Complaint and its opening paragraph, the Funeral Home is identified as Kirkley-Ruddick Funeral Home, **PA**. (Emphasis added). Similarly, that abbreviation appears in other submissions of plaintiff. *See*, *e.g.*, ECF 12 at 1. Elsewhere, however, the abbreviation appears as "P.A." *See*, *e.g.*, ECF 10-1. I have used the abbreviation of "**P.A.**" because it is the abbreviation used in ECF 10-1 and because it avoids any confusion with the abbreviation for the State of Pennsylvania.

an agreement with Budget and in violation of his duty to exercise due care. Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332(a).

The Complaint contains four counts. Count I alleges that Mr. Lennox breached a "contractual duty to exercise due care in obtaining liability insurance" for Budget. ECF 1, ¶¶ 24-30. Count II asserts that Mr. Lennox acted negligently in procuring insurance Budget's insurance policy. *Id.* ¶¶ 31-39. Count III lodges a breach of contract claim against State Farm on a theory of principal-agent liability. *Id.* ¶¶ 40-52. And, Count IV asserts that State Farm is vicariously liable for Mr. Lennox's negligence. *Id.* ¶¶ 53-67. Four exhibits are attached to the Complaint. ECF 1-2 to ECF 1-4. Defendants have moved to dismiss the Complaint (ECF 10, the "Motion"), supported by one exhibit. ECF 10-1. Plaintiff opposes the Motion (ECF 12), and defendants have replied. ECF 13.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion in part and deny it in part. ECF 10.

## I. Background[2]

Funeral Home is located in Glen Burnie, Maryland. ECF 1, ¶ 14. At the relevant time, Funeral Home was insured against property damage under a State Auto insurance policy. *Id.* ¶ 18. State Auto is an Ohio corporation that is authorized to issue insurance policies in Maryland. *Id.* ¶ 1. Budget is a waterproofing contractor incorporated under the laws of Maryland, with its principal place of business in Linthicum Heights, Maryland. *Id.* ¶ 2. In its line of work, Budget "routinely excavate[s] below the floors and adjacent to the foundation walls of existing buildings." *Id.* ¶ 7.

---

[2] Given the posture of this case, I shall assume the truth of the facts alleged in the Complaint.

On or about May 6, 2015, Budget purchased, through Mr. Lennox, a commercial general liability insurance policy (the "Policy" or the "CGL Policy") issued by State Farm. *Id.* ¶ 10; ECF 1-1 (CGL Policy). The CGL Policy was effective from May 6, 2015 to May 6, 2016. *Id.* ¶ 13.

At the time of the purchase of the Policy, Mr. Lennox was a Maryland-licensed insurance agent operating a State Farm insurance agency in Glen Burnie, Maryland. ECF 1, ¶ 8. According to plaintiff, Mr. Lennox "knew or should have known that Budget Waterproofing needed liability coverage for the collapse or partial collapse of buildings." *Id.* ¶ 11.

The CGL Policy was modified by an addendum titled "CMP-4600 ARTISAN AND SERVICE CONTRACTOR ENDORSEMENT." ECF 1-1 at 64 (the "Addendum"). The Addendum contains the following warning at the top of the first page: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *Id.* In pertinent part, the Addendum provided, *id.*:

    2. "**SECTION II—LIABILITY** is amended as follows:

        a. The following exclusions are added under **Section II—Exclusions of SECTION II—LIABILITY**:

        **Collapse Hazard**

        "Property damage" arising out of or included within the "collapse hazard." This exclusion does not apply to:

        **(1)** Operations performed for you by others; or

        **(2)** "Property damage" included within the "products-completed operations hazard" or the "underground property damage hazard."

The Addendum defined "Collapse hazard" as "'structural property damage' and any resulting 'property damage' to any other property at any time." *Id.* at 65. Further, the Addendum provided, *id.*:

    **(c)** "Structural property damage" means the collapse of or structural injury to any building or structure due to:

**i.** Grading of land, excavating, borrowing, filling, back-filling, tunneling, pile driving, coffer-dam work, or caisson work; or

**ii.** Moving, shoring underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

On December 5, 2015, Budget entered into a written agreement with Funeral Home to install a subfloor drainage system. ECF 1, ¶ 15; *see* ECF 1-2 (Budget-Funeral Home agreement). The project entailed digging below Funeral Home's floor and adjacent to its foundation walls. ECF 1, ¶ 15. On February 24, 2016, while the project was ongoing, Funeral Home partially collapsed. *Id.* ¶ 17.

Following the collapse, Funeral Home filed a property claim with its insurer, State Auto, for damages resulting from the occurrence. *Id.* ¶ 18. After applying the $ 1,000 deductible under the Policy, State Auto paid Funeral Home $ 306,347.73. *Id.* ¶ 19. State Auto notified State Farm of Funeral Home's claim as well as State Auto's subrogation interest. *Id.* ¶ 20.

On December 21, 2016, State Farm denied liability coverage for Budget, citing the collapse hazard exclusion in the CGL Policy. *Id.* at ¶ 21; ECF 1-3 (Denial Letter). It explained, ECF 1-3:

This letter serves as a follow-up to our conversation that occurred on December 19, 2016. At that time, I informed you following a review of our insured's policy, there is an attached endorsement, CMP-4600 that prevents us from extending coverage for this loss. This endorsement includes an exclusion for property damage arising out of or included in the "collapse hazard." "Collapse hazard" is defined as "structural property damage" and any resulting property damage to any other property at any time.

State Auto, as subrogee of Funeral Home, filed suit against Budget in this Court on January 17, 2018. ECF 1, ¶ 22; *see State Auto. Mut. Ins. Co. v. Budget Waterproofing, Inc.*, ELH-18-155 (D. Md.). The parties to that case settled on or about September 18, 2018. ECF 1-4 (Settlement Agreement and Release); ECF 10-1 (same).

Under the terms of the Settlement Agreement and Release, Budget agreed to pay State Auto a total of $ 50,000. ECF 1-4 at 2-3. Further, Budget "assign[ed] to State Auto all claims that it owns, and/or claims it acquires relating to the Incident, including, but not limited to, all rights Budget Waterproofing may have against State Farm and its agents, including without limitation Ron Lennox and Jim Chen ("Assigned Claims")." *Id*. at 3. In return, State Auto agreed that, "[u]pon resolution of the Assigned claims," State Auto and Funeral Home "will release their claims against Budget Waterproofing arising from or relating to the Incident and will stipulate to dismiss, with prejudice and without costs, State Auto's Subrogation Action." *Id*. And, State Auto promised that if it recovered in regard to the Assigned Claims, it would "share that recovery, net of pro rata fees and costs, with Budget Waterproofing on a 50:50 basis" up to "the first $ 100,000 in gross recovery." *Id*. at 3. Notably, the agreement provided that "Budget Waterproofing and its principals and employees agree to fully cooperate with State Auto in its efforts to pursue any of the Assigned Claims." *Id*.

This litigation followed on May 10, 2019. ECF 1.[3]

## II.    Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by

---

[3] In the Motion, defendants repeatedly aver that the Complaint was filed on April 25, 2019. ECF 10 at 2, 7. However, the docket reflects that the Complaint was filed on May 5, 2019. *See* ECF 1.

a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long*

*Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Moreover, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n. 3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. May 6, 2016); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). But, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert, Ariz.*, 576 U.S. __, 135 S. Ct. 2218 (2015), *as recognized in Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015).

As noted, there are four exhibits attached to the Complaint: the CGL Policy (ECF 1-1); the Budget-Funeral Home agreement (ECF 1-2); the Denial Letter (ECF 1-3); and the Settlement Agreement and Release (ECF 1-4).[4] These documents are specifically referenced in the Complaint. *See* ECF 1, ¶ 13 (citing ECF 1-1); ¶ 15 (citing ECF 1-2); ¶ 21 (citing ECF 1-3); ¶ 23

---

[4] Defendant also submitted the Settlement Agreement and Release in support of the Motion. ECF 10-1.

(citing ECF 1-4). Accordingly, at this juncture, I may consider the exhibits appended to the Complaint, without converting the Motion to one for summary judgment.

### III. Discussion

Defendants move to dismiss the Complaint on three grounds. They contend that Budget's assignment to State Auto of Budget's claims against State Farm and Mr. Lennox is void because Budget's liability for the partial collapse of Funeral Home has not yet been determined. ECF 10 at 3-6. Defendants also argue that the assignment is void as against public policy. *Id.* at 4-5. And, defendants maintain that plaintiff's claims are subject to Maryland's three-year statute of limitations, set forth in Md. Code (2013 Repl. Vol., 2018 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."). Because plaintiff did not file suit until May 6, 2015, *i.e.*, more than three years after Budget obtained the CGL Policy on May 6, 2015, defendants maintain that plaintiff's suit is time-barred. ECF 10 at 6-8.

### A. Choice of Law

As noted, jurisdiction in this Court is founded on diversity of citizenship. 28 U.S.C. § 1332. The parties seem to assume, without discussion, that Maryland law applies.

"When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). This principle extends to limitations. *See Brown v. Am. Broad. Co., Inc.*, 704 F.2d 1296, 1299 (4th Cir. 1983); *see also Coe v. Thermasol, Inc.*, 785 F.2d 511, 514 n.5 (4th Cir. 1986) (noting that "federal courts sitting in diversity apply the forum state's statute of limitations"). Maryland is, of course, the forum state. Therefore, I shall apply Maryland's choice of law rules.

For tort claims, Maryland applies the principle of *lex loci delicti,* i.e., the law of the "place of the alleged harm." *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Budget, a Maryland corporation, purchased the CGL Policy in Maryland from Mr. Lennox, a Maryland-based insurance agent. Therefore, any tort claims stemming from Mr. Lennox's alleged failure to procure adequate insurance would have occurred in Maryland. Thus, Maryland tort law governs plaintiff's negligence claims.

As for contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

The parties have not addressed these issues. Nevertheless, because it appears that the contract was formed in Maryland, and the Policy does not appear to contain a choice of law clause, I shall apply Maryland law with respect to plaintiff's contract claims.

**B. Statute of limitations**

State Farm and Mr. Lennox have moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), asserting that State Auto's claims are barred by Maryland's three-year statute of limitations for contract and tort claims. ECF 10 at 6 (citing C.J. § 5-101). According to defendants,

"a cause of action for failure to procure insurance accrues at the time that the insurance was procured," *i.e.*, on May 6, 2015, "not when coverage for a loss was denied." *Id.* at 6-7. Thus, in defendants' view, the Complaint is untimely because plaintiff did not file suit until May 10, 2019, more than three years after May 6, 2015. *Id.* at 7.

State Auto disagrees with this analysis. Plaintiff avers that "the statute of limitations on a claim for failing to obtain insurance begins to run when the insurance applicant discovers the breach." ECF 12 at 7 (citing *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 741 A.2d 1099 (1999)). According to plaintiff, Budget did not learn of Mr. Lennox's failure to procure collapse hazard insurance until December 21, 2016, when State Farm sent Budget the Denial Letter. *Id.* at 9. If that date is the starting point, the Complaint was timely filed within the three-year limitations period.

In the ordinary course, Maryland law requires that "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. *See* C.J. 5–101. Statutes of limitations "ensure fairness to defendants by encouraging promptness in bringing claims, thus avoiding problems that may stem from delay. . . ." *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 333, 635 A.2d 394, 399 (1994). Statutes of limitation also allow "individuals the ability to plan for the future without the indefinite threat of potential liability." *Id.*

The Maryland Court of Appeals has explained: "Limitations statutes . . . are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). Generally, "the party raising a statute of limitations defense has the burden of proving that the

cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Under Maryland law, "[a]n unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor." *James v. Goldberg*, 256 Md. 520, 527, 261 A.2d 753 (1970); *see Columbia Ass'n v. Poteet*, 199 Md. App. 537, 555, 23 A.3d 308, 319 (2011); *Motor Vehicle Sec. Fund v. All Coverage Underwriters, Inc.*, 22 Md. App. 586, 614, 325 A.2d 115, 131 (1974). Consequently, "assignees are 'bound to the same limitations period as their assignor.'" *Univ. Sys. of Md. v. Mooney*, 407 Md. 390, 411, 966 A.2d 418, 430 (2009) (quoting *Jones v. Hyatt Ins. Agency, Inc*., 356 Md. 639, 653 n.8, 741 A.2d 1099, 1006 n.8 (1999)).

In Maryland, an action for breach of contract is generally governed by Maryland's three-year statute of limitations. *See Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 169, 857 A.2d 1095, 1105 (2004); *Catholic Univ. of Am. v. Bragunier Masonry Contractors, Inc.*, 139 Md. App. 277, 297, 775 A.2d 458, 469 (2001), *aff'd*, 368 Md. 608, 796 A.2d 744 (2002). Notably, "a cause of action for breach of contract accrues when the contract is breached, and when the 'breach was or should have been discovered.'" *Boyd v. Bowen*, 145 Md. App. 635, 669, 806 A.2d 314, 333 (2002) (quoting *Jones*, 356 Md. at 648, 741 A.2d at 1104); *see also Goodman*, 494 F.3d at 465; *Millstone as Tr. of Montgomery Scrap Corp. Profit Sharing Tr. v. St. Paul Travelers*, 183 Md. App. 505, 512, 962 A.2d 432, 437 (2008), *aff'd*, 412 Md 424, 430, 987 A.2d 116, 120 (2010).

Negligence claims are also subject to a three-year statute of limitations. *Poole v. Coakley & Williams Const., Inc*., 423 Md. 91, 131, 31 A.3d 212, 236 (2011). "A negligence action accrues 'when facts exist to support each element of the action." *Kirson v. Heckstall*, No. 698, Sept. Term,

2017, 2019 WL 290121, at *8 (Md. Ct. Spec. App. Jan. 15, 2019) (quoting *Green v. N.B.S., Inc.*, 409 Md. 528, 546, 976 A.2d 279, 289 (2009)); *see Green v. N. Arundel Hosp. Ass'n, Inc.*, 366 Md. 597, 607, 785 A.2d 361, 367 (2001); *Owens–Illinois v. Armstrong*, 326 Md. 107, 121, 604 A.2d 47, 54 (1992).

An action typically accrues in Maryland at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole*, 423 Md. at 131, 31 A.3d at 236. "[T]he question of accrual in C.J. § 5-101 is left to judicial determination, unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Id.* at 131, 31 A.3d at 236; *see Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

But, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc.*, 383 Md. at 167, 857 A.2d at 1104.

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin &*

*Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012); *see Benjamin*, 394 Md. at 75, 904 A.2d at 521. However, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc.*, 383 Md. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Wash.,* 114 Md. App. 169, 188–89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981). But, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Application of the discovery rule involves a two-prong test. The Maryland Court of Appeals has explained that the first prong, "sufficiency of the actual knowledge to put the claimant on inquiry notice," concerns "the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313, 1324 (1986); *Pennwalt*, 314 Md. at 453, 550 A.2d at 1165–66 (noting that a plaintiff must have notice of the nature and cause of his or her injury). As indicated, with regard to inquiry notice, "a person must have actual notice, either express or implied. Express knowledge is direct,

whether written or oral, from sources 'cognizant of the fact[s].'" *Benjamin*, 394 Md. at 89, 904 A.2d at 529 (quoting *Poffenberger*, 290 Md. at 636–37, 431 A.2d at 681) (citation omitted). Implied notice occurs "when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further." *Pennwalt*, 314 Md. at 447, 550 A.2d at 1163.

The second prong, "the sufficiency of the knowledge that would have resulted from a reasonable investigation," requires that after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing. *Benjamin*, 394 Md. at 90, 904 A.2d at 529; *see Pennwalt*, 314 Md. at 452, 550 A.2d at 1165; *Baysinger v. Schmid*, 307 Md. 361, 367-68, 514 A.2d 1, 4 (1986). "The requirement for inquiry notice is that if a person investigates diligently, the causal connection would be revealed." *Benjamin*, 394 Md. at 90, 904 A.2d at 529.

As noted, the defense of limitations is ordinarily not considered in the context of a motion to dismiss. *Edwards*, 178 F.3d at 243; *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller*, 224 F. Supp. 2d at 985; *see Pressley*, 553 F.3d at 336; *Goodman*, 494 F.3d at 464; *Pilgrim's Pride Corp.*, 395 F.3d at 474. In resolving the limitations issue in this case the Court may, as noted, consider the CGL Policy and the Denial Letter, as both were attached to the Complaint.

The parties agree that whether the Complaint is time-barred depends on when the statute of limitations began to run on the claims that Budget could have asserted against Mr. Lennox and State Farm but instead assigned to State Auto. ECF 10 at 6; ECF 12 at 8. But, they disagree as to when the limitations clock started to tick. Defendants contend that the limitations period for

Budget's tort and contract claims began on May 6, 2015, when Budget purchased the CGL Policy from Mr. Lennox.  ECF 10 at 7-8.  They posit that Budget was on inquiry notice on that date, because "a sophisticated business . . . has a duty to read its insurance policy after it has been issued" and "a review of the policy would have clearly shown that collapse was not a covered peril."  *Id.* at 7.

Conversely, relying on *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 741 A.2d 1099 (1999), plaintiff asserts that the clock did not start to run until December 21, 2016.  On that date, State Farm denied coverage for the partial collapse.  ECF 12 at 9, 10-11.

The facts of *Jones*, 356 Md. 639, 741 A.2d 1099, are analogous to this case.  There, on July 25, 1985, a motor vehicle driven by an employee of K&D Auto, Inc. collided with a vehicle driven by Charles Jones.  *Id.* at 642, 741 A.2d at 1100.  Mr. Jones subsequently filed a claim with his insurance company, Allstate Insurance Company.  Just twenty days before the accident, K&D purchased liability insurance through Hyatt Insurance Agency, Inc., and it believed the policy covered motor vehicle accidents.  *Id.*  However, upon notifying Hyatt of Mr. Jones' claim, Hyatt informed K&D that the policy did not include motor vehicle liability.  *Id.*  Hyatt informed Mr. Jones by letter on August 12, 1985, that it would not cover K&D's liabilities.  *Id.* at 643, 741 A.2d at 1101.

Mr. Jones and his wife subsequently filed a personal injury action in Maryland State court against K&D and the driver.  *Id.*  Judgment was entered against K&D on June 21, 1989.  On the same day, K&D assigned to the Joneses its claims against Hyatt for failure to procure motor vehicle liability insurance.  *Id.*  On October 6, 1989, more than four years after the accident, K&D and the Joneses filed suit against Hyatt, alleging breach of contract and negligence.  After discovery, Hyatt moved for summary judgment, arguing that the suit was barred by limitations.  The circuit court

dismissed the Joneses' claims, the intermediate appellate court reversed, and both parties sought review in the Maryland Court of Appeals. *Id.* at 646, 741 A.2d at 1102-1103.

The Maryland Court of Appeals was asked, *inter alia*, to decide whether the statute of limitations had expired on the Joneses' contract claim against Hyatt for alleged breach of its contract with K&D to obtain motor vehicle liability insurance. *Id.* at 642, 741 A.2d at 1100. The court first "assume[d]" that the Joneses had a viable cause of action in contract, observing that it had previously "recognized a similar third-party beneficiary cause of action in contract when a tort claimant sues the tortfeasor's liability insurer for a declaratory judgment concerning coverage or for breach of the contractual duty to indemnify." *Id.* at 646-47, 741 A.2d at 1103. And, it found that the Joneses' claims were subject to the same statute of limitations as K&D under the "well-settled principle that a third-party beneficiary to a contract 'takes subject to the same defense against the enforcement of the contract . . . .'" *Id.* at 647, 741 A.2d at 1103 (quoting *Shilman v. Hobstetter*, 294 Md. 678, 690, 241 A.2d 570, 577 (1968)).

However, the court concluded that the plaintiffs' contract claim was time-barred. *Id.* It explained that "[t]he statute of limitations on the Joneses' contract claim began to run when the cause of action for breach of contract accrued," which occurred when "Hyatt breached its contract to provide insurance and when the breach was or should have been discovered." *Id.* at 648, 741 A.2d at 1103-04. The court then distinguished between claims alleging breach of an agreement to procure insurance with those alleging breach of the duty to indemnify. *Id.* at 649, 741 A.2d at 1104. The court opined, *id.* at 650, 741 A.2d at 1104-05:

> Determining when a typical liability insurance policy has been breached depends on which promise under the policy the insurer has broken. An insurer's contractual duty to indemnify an insured is ordinarily not breached until an injured tort claimant has obtained a determination of liability and damages in an underlying tort action, and the insurer refuses to pay. The insurer's promise is to indemnify or to pay what its insured is legally obligated to pay. The time for performance is

when there is a settlement or a judgment against the insured, and the breach is the insurer's refusal to pay that settlement or judgment. The statute of limitations does not begin to run until that time.

\* \* \*

In contrast [to claims based on the duty to defend or to indemnify], a contract to obtain insurance is ordinarily breached immediately upon the broker's failure to procure the insurance in a timely manner. The promise of the agent or broker is not to provide a defense or to pay a judgment. Instead, the promise is to obtain an insurance policy, and the breach occurs when the agent or broker does not timely obtain that policy. This breach cannot be cured after the insurance applicant commits a tort for which he or she rightfully believes that insurance coverage has been obtained. The consequence of the agent's failure to procure the insurance prior to the accidental tort is that the client will not be insured. There will be no insurer-furnished defense or indemnity.

The court pointed to the "essential" distinction between a contract of insurance and an agreement to procure insurance. *Jones*, 356 Md. at 650, 741 A. 2d at 1105. As for the failure to procure the insurance, the court said, *id.*: "The contract was clearly breached long before the Joneses obtained a judgment against K&D."

The court did not elucidate a precise point in time at which K&D or the Joneses should have discovered the breach. But, it canvassed the summary judgment record for evidence as to when the plaintiffs had sufficient information to know of the breach. *Id.* at 651, 741 A.2d at 1105. The court stated, *id.* at 650-51, 741 A.2d at 1105: "The record shows that within a few days after the July 25, 1985, accident, John Swem of the Hyatt Insurance Agency informed K&D that its 'vehicles were not covered.' The Joneses were aware that K&D was uninsured as early as August 1985." Accordingly, because the plaintiffs did not file their action against Hyatt until October 1989, the court dismissed the breach of contract claim as untimely. *Id.* at 651, 741 A.2d at 1105.

Significantly, *Jones* does not support the positions staked out here by either side. The *Jones* Court did not hold that K&D should have known about Hyatt's failure to procure motor vehicle insurance on July 5, 1985, the day it purchased the insurance policy. But, neither does

*Jones* embrace plaintiff's theory that an insured entity is not expected to discover a failure to procure insurance until the insurance agency denies its claim for coverage. ECF 12 at 7, 10. And, for good reason. This approach would reward ignorance, encouraging an insured party to play ostrich and bury its head in the sand. *See Twelve Knotts Ltd. P'ship v. Fireman's Fund Ins. Co.*, 87 Md. App. 88, 103, 89 A.2d 105, 113 (1991) (finding that "sophisticated business entity" was on inquiry notice at the time it entered into a contract where the "offending policy provision is clear and unambiguous").

At bottom, *Jones* teaches that the discovery rule is a fact-intensive inquiry. Applying the lessons of *Jones* to this case, the record compels the dismissal of plaintiff's contract claims as time-barred. But, it does not support dismissal of plaintiff's negligence claims.

Plaintiff's contract claims are untimely because plaintiff was on inquiry notice that Mr. Lennox breached his agreement with Budget on May 6, 2015, the date Budget obtained the CGL Policy. "In Maryland, '[o]ne is under a duty to learn the contents of a contract before signing it[.]'" *Amir & Associates, Inc. v. PNC Bank, N.A.*, No. 111, Sept. Term 2014, 2015 WL 5885251 at *5 (Md. Ct. Spec. App. June 16, 2015) (quoting *Holzman v. Fiola Blum, Inc.*, 125 Md. App. 602, 629, 726 A.2d 818, 831 (1999)); *see Sass v. Andrew*, 152 Md. App. 406, 440, 832 A.2d 247, 266 (2003) (rejecting fraud claim, in part, because contract was unambiguous and plaintiff "never read the Contract before signing it"); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 64, 810 A.2d 1045, 1057 (2002) (plaintiff was "obligated to read the [insurance] policy"); *Binder v. Benson*, 225 Md. 456, 461, 171 A.2d 248 (1961) (noting that "if there's no fraud, duress, or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or without reading it or having it read to him, signs it, is bound by his signature as to all of its terms"); *see also Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 695 (D. Md. 2001) (finding

statute of limitations had run as a matter of Maryland law on claims pertaining to an insurance policy because "[p]laintiffs were in possession of sufficient information at the time the insurance policies were issued to have discovered all of the alleged claims").

*Twelve Knotts Ltd. Partnership*, 87 Md. App. 88, 589 A.2d 105, illustrates this straightforward rule. There, Twelve Knotts, a real estate partnership, solicited bids from several brokers for a property and liability insurance policy. *Id.* at 92-93, 589 A.2d at 107. It selected the defendants' policy based on the defendants' representation that the annual premium on the three-year policy would not increase over the life of the contract. *Id.* at 93-95, 589 A.2d at 108-109. In fact, the policy contained no such guarantee, and the insurer raised the rate for the coverage after the first year. *Id.* at 95-96, 589 A.2d at 109. Twelve Knotts filed suit, alleging, *inter alia*, breach of contract, fraud, and negligent misrepresentation. *Id.* at 91, 589 A.2d at 107. The circuit court entered judgment in favor of the defendants on the plaintiff's breach of contract claim, and the plaintiff appealed. *Id*.

The Maryland Court of Special Appeals affirmed. *Id.* The court rejected the plaintiff's contention that an insured may assume that the contents of the insurance policy match the application such that the insured's failure to read the policy does not excuse the insurer. *Id.* at 92-104, 589 A.2d at 113. Quoting an insurance law treatise, the court stated, *id.*:

> "[W]hen the insured accepts a policy, he accepts all of its stipulations, provided they are legal and not contrary to public policy. Where changes from the application appear in the delivered contract, under a more stringent doctrine the insured has a duty to examine it promptly and notify the company immediately of his refusal to accept it. If such policy is accepted or is retained an unreasonable length of time, the insured is presumed to have ratified any changes therein and to have agreed to all its terms."

(Alteration in original) (quoting 2 J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7155).

Finding this "to be a reasonable rule," the court "adopt[ed] it." *Id.* Applying this rule, it concluded that "it [was] clear that the breach of contract action must fail." *Id.* The plaintiff was "a sophisticated business entity having had previous experience purchasing insurance"; it "had an opportunity when the policy was delivered to discover the provision and, if [it] chose, reject the policy on the ground of non-conformance"; and [t]he offending policy provision is clear and unambiguous[.]" *Id.* at 104-105, 589 A.2d at 113-114. Thus, the court found that because plaintiff "neglected" to read the policy, it was "deemed to have accepted the policy with the non-conforming provision in it." *Id.* at 105, 589 A.2d at 114.

Here, plaintiff lodges breach of contract claims against defendants in Counts I and III. According to plaintiff, Mr. Lennox, "acting with State Farm's actual or apparent authority," ECF 1, ¶ 46, "promised to obtain CGL coverage" that would meet Budget's "business needs." *Id.* ¶ 25. This gave rise to "a contractual duty to exercise due care in obtaining liability insurance," *id.* ¶ 26, which Mr. Lennox allegedly breached when he failed to procure insurance for Budget that included collapse hazard coverage. *Id.* ¶ 27. However, Budget had "a duty to learn the contents of [the CGL Policy] before signing it." *Amir & Associates, Inc.*, 2015 WL 5885251 at *5. This is especially so because Budget is "a sophisticated business entity." *Twelve Knotts Ltd. P'ship*, 87 Md. App. 88, 589 A.2d 105.

Had Budget read the Policy, it would have discovered the collapse hazard exclusion in the Addendum, language which is "clear and unambiguous." *Id.* Thus, Budget was on inquiry notice of Mr. Lennox's breach of contract on May 6, 2015, the day it obtained the Policy. This means that the limitations period on the breach of contract claims that Budget assigned to plaintiff expired on May 6, 2018, more than a year before plaintiff filed suit on May 10, 2019.

In contrast, I cannot conclude at this juncture that the statute of limitations has run on plaintiff's negligence claims. Plaintiff asserts that Mr. Lennox "knew or should have known that [Budget] required liability insurance that covered its liability or potential liability for exaction work at or near foundation walls, including its liability for the collapse and/or partial collapse of structures[.]" ECF 1, ¶ 33. Budget allegedly "placed confidence and trust in Mr. Lennox" to act with due care in procuring insurance because he was "an experienced insurance agent." *Id.* ¶ 34. However, plaintiff claims that Mr. Lennox breached his "duty to exercise reasonable care and skill procuring liability insurance" for Budget, *id.* ¶ 35, "by negligently and carelessly" procuring insurance that did not cover building collapses. *Id.* ¶ 36.

Based on these allegations, which must be taken as true at this stage, it is unclear when Budget should have discovered that Mr. Lennox acted unreasonably. *See, e.g.*, *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973 (holding that factual issues precluded deciding on summary judgment whether legal malpractice claims were untimely); *Kelly v. JPMorgan Chase Bank, N.A.*, No. 1483, Sept. Term, 2016, 2017 WL 6016588 at *4 (Md. Ct. Spec. App. Dec. 5, 2017) (declining to dismiss complaint as time-barred because "one cannot determine when Chase first breached the contract alleged . . . much less when appellants knew, or reasonable should have known, that they were harmed by the breach"). Perhaps Budget's reliance on Mr. Lennox's expertise was unwarranted, and it should have read the CGL Policy on May 6, 2015. But, plaintiff alleges that Mr. Lennox held himself out as an insurance expert, inducing Budget to rely on him to procure insurance that covered its business needs. Under those circumstances, Budget may not have had cause to investigate Mr. Lennox's performance until it learned of Funeral Home's collapse on February 24, 2016, or until it received the Denial Letter on December 21, 2016. Under the latter scenario, plaintiff's negligence claims would be timely.

**C. Assignment**

Defendants posit that the Complaint fails as a matter of law because Budget's assignment of its claims to State Auto is void. According to defendants, the assignment is invalid because no judgment has been entered as to Budget's liability for the partial collapse of Funeral Home. ECF 10 at 3-4. In addition, defendants contend that the assignment is void as against public policy.. ECF 10 at 4.

"'As a general rule, parties are free to contract as they wish'" under Maryland law. *Stickley v. State Farm Fire & Cas. Co*., 431 Md. 347, 366, 65 A.3d 141, 153 (2013) (quoting *Nesbit v. Gov't Emps. Ins*. Co., 382 Md. 65, 76, 854 A.2d 879, 885 (2004)). Accordingly, claims arising under tort or contract law are ordinarily assignable. *See Roberts v. Total Health Care, Inc*., 349 Md. 499, 523, 709 A.2d 142, 154 (1998); *Medical Mut. Liability Ins. Soc. v. Evans*, 330 Md. 1, 29, 622 A.2d 103, 116 (1993); *Summers v. Freishtat*, 274 Md. 404, 409, 335 A.2d 89, 92 (1975) ("[A] chose in action in tort is generally assignable in the absence of a statutory prohibition, if it is a right which would survive the assignor and could be enforced by his personal representative."); *see also Motor Vehicle Sec. Fund*, 22 Md. App. at 614, 325 A.2d at 131 ("It is basic law that, even where a contract itself may not be assignable, the right to receive money due or to become due under an existing contract may be assigned.").

That said, as with any other contract, an assignment that violates public policy is unenforceable. *See Stickley*, 431 Md. at 366, 65 A.3d at 153; *Hernandez v. Suburban Hosp. Ass'n*, 319 Md. 226, 235, 572 A.2d 144, 148 (1990) (examining the public policy reasons to preclude a particular assignment); *Schirm v. Wieman*, 103 Md. 541, 545, 63 A. 1056, 1057 (1906) (declaring that contracts to aid criminals or obstruct prosecutions "are contrary to public policy, and absolutely void"); *McCabe v. Medex*, 141 Md. App. 558, 786 A.2d 57, 62 (2001) ("[A] contract

conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy."), *rev'd on other grounds*, 372 Md. 28, 811 A.2d 297 (2002).

"Public policy" is a "'principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good . . . .'" *Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat. Arena*, 282 Md. 588, 606, 386 A.2d 1216, 1228-29 (1978) (quoting *Egerton v. Earl Brownlow*, 4 H.L. Cas. 1, 196 (1853)). Although the concept may be easy to articulate, it eludes a precise, universal definition. *Id.* (noting that "jurists to this day have been unable to fashion a truly workable definition of public policy"); *Wholey v. Sears Roebuck*, 370 Md. 38, 53, 803 A.2d 482, 490 (2002) (plurality opinion) (describing public policy as a "'nebulous concept'" (quoting *Patton v. United States*, 281 U.S. 276, 306, (1930))). This is especially so because "conceptions of public policy tend to ebb and flow with the tides of public opinion[.]" *Wash. Nat. Arena*, 282 Md. at 606, 386 A.2d at 1228; *see Wholey*, 370 Md. at 53, 803 A.2d at 490 ("'The public policy of one generation may not, under changed conditions, be the public policy of another.'" (citation omitted)).

Given the principle's slippery nature, the Maryland Court of Appeals has urged restraint in divining public policy. *Adler v. Am. Standard Corp*., 291 Md. 31, 46, 432 A.2d 464, 472 (1981) ("We have always been aware, . . . that declaration of public policy is normally the function of the legislative branch."); *see also Wholey*, 370 Md. at 53, 803 A.2d at 490 ("Courts must . . . use care in creating new public policy[.]"). Thus, courts "must strive to confine the scope of public policy mandates to clear and articulable principles of law and to be precise about the contours of actionable public policy mandates." *Wholey*, 370 Md. at 53, 803 A.2d at 490.

Notably, Maryland courts have repeatedly cautioned against invalidating voluntary contractual arrangements on public policy grounds. *See Stickley,* 431 Md. at 366, 65 A.3d at 153;

*Adler*, 291 Md. 31, 432 A.2d at 473; *Wash. Nat. Arena*, 282 Md. at 606, 386 A.2d at 1228. This reluctance "serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle." *Id*. at 606, 386 A.2d at 1229.

In assessing whether a contract violates public policy, the Maryland Court of Appeals has instructed, *Wash. Nat. Arena*, 282 Md. at 607, 386 A.2d at 1229:

> In the final analysis, it is the function of a court to balance the public and private interests in securing enforcement of the disputed promise against those policies which would be advanced were the contractual term held invalid. Enforcement will be denied only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh 'the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement' of the contested term.

(Quoting the Restatement (Second) of Contracts § 320, Comment b (Tent. Draft No. 12, 1977)).

Put differently, a contract should be invalidated on public policy grounds "only in those cases where the challenged agreement is patently offensive to the public good, that is, where 'the common sense of the entire community would . . . pronounce it' invalid." *Wash. Nat. Arena*, 282 Md. at 607, 386 A.2d at 1228 (quoting Estate of Woods, Week & Co., 52 Md. 520, 536 (1879)). And, in assessing public policy, courts consider whether the public policy that conflicts with the contract is embedded in the Maryland Constitution, statutory enactments, or administrative regulations. *See, e.g*., *Stickely*, 431 Md. at 367-368, 65 A.3d at 153-54 (examining Maryland Insurance Code to determine whether liability exclusion is void as against public policy); *Allstate Ins. Co v. Hart*, 327 Md. 526, 532-33, 611 A.2d 100, 103 (1992) (finding exclusion clause in motor vehicle insurance policy invalid on public policy grounds based on specific statutory provisions).

Defendants argue that the Complaint fails to state a claim because the assignment of Budget's claims to plaintiff is invalid. In their view, the assignment is invalid because Budget has

not yet been held liable for Funeral Home's partial collapse. ECF 10 at 3-4. This is crucial, defendants insist, because "liability must be obtained in order to prove that the insured incurred damages arising from insurer's allegedly negligent conduct and establish that the insured had a valid claim against its insurers." *Id.* at 3-4. Further, defendants argue that the assignment is void as against public policy because prejudgment assignments "improperly combine the issues of an insured's liability in the underlying claim and the coverage dispute," and "provide[] the insured an interest to collude with the assignee and ensure recovery against the insurer." *Id.* 5.

Plaintiff responds that the assignment is valid regardless of Budget's liability, because the claims that State Auto asserts are premised on the failure to procure insurance, which accrued at the time Mr. Lennox sold the allegedly deficient insurance. ECF 12 at 8. And, plaintiff maintains that defendants' public policy argument steers into the teeth of Maryland case law permitting the assignment of tort and contract claims. *Id.* at 10.

Defendants' attacks on the assignment contract are unpersuasive. Their contention that the assignment is void absent a determination of Budget's liability is contrary to both Maryland case law and logic. As discussed, tort claims are presumed assignable. *Stickley*, 431 Md. at 366, 65 A.3d at 153 (2013); *Roberts*, 349 Md. at 523, 709 A.2d at 154. Here, the tort claims that Budget assigned to plaintiff are premised on the broker's alleged failure to procure collapse hazard insurance. *Jones*, 356 Md. at 650, 741 A.2d at 1104. This allegedly occurred on May 6, 2015, when Budget obtained the Policy through Mr. Lennox. Budget's liability for Funeral Home's partial collapse is wholly inapposite to the issue of whether Mr. Lennox acted negligently in procuring insurance for Budget. Funeral Home's decision to assign those claims rather than sue defendants itself does not change this fact. Accordingly, the absence of a judgment against Budget does not compel the dismissal of the Complaint.

Likewise, defendants' argument that the assignment violates public policy falls flat. Defendants have not cited to a reported Maryland appellate case that provides that the assignment of a claim for failure to procure insurance violates Maryland public policy. ECF 10 at 4-6. Nor have they pointed to any statutes or administrative materials suggesting that such an assignment contravenes public policy. And, to the extent that defendants rely on decisions from other jurisdictions, those are not helpful because they have no bearing on the public policy of Maryland.

Accordingly, I conclude that the assignment is not void as against public policy.

### IV.    Conclusion

For the foregoing reasons, the Motion (ECF 10) is GRANTED in part and DENIED in part. Specifically, limitations expired as to Budget's contract claims before plaintiff filed suit. Therefore, I shall dismiss Count I and Count III. However, I shall deny the Motion as to the tort claims lodged in Count II and Count IV.

An Order follows, consistent with this Memorandum Opinion.


Date: October 24, 2019                              _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge